**Jane DOE, Plaintiff–Appellant,**

v.

**John DOE, Defendant–Appellee.**

No. 91–1201.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1992.

Decided Aug. 10, 1992.

As Amended Sept. 3, 1992.

---

Gregg Meyers, Wise & Cole, Charleston, S.C. argued, for plaintiff-appellant.

James R. Hubbard, Allman, Spry, Humphreys, Leggett & Howington, P.A., Winston–Salem, N.C. argued (Daniel S. Johnson, Wilson, DeGraw, Johnson & Rutledge, Winston–Salem, N.C. on brief), for defendant-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Jane Doe, a 37–year–old Florida resident, sued her uncle John Doe, a North Carolina resident, under the district court's diversity jurisdiction.[1] Jane's complaint contained counts for intentional and negligent infliction of emotional distress. Jane alleged that John, who is 9 years older than she is, sexually abused her when she was between the ages of 7 and 12, causing her to have lasting psychological problems. She also alleged that she only began to realize the cause of her problems after she sought counseling in 1989. John moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the statute of limitations had run. In granting the motion, the district court first stated that it was ruling solely on the pleadings. Then the district court, applying North Carolina law, held that the statute of limitations barred the

action. Jane appeals, arguing (1) that the district court selectively looked outside the pleadings, and therefore should have treated John's motion to dismiss as a motion for summary judgment and considered all materials outside the pleadings; and (2) that the district court erred in applying North Carolina law. We now affirm.

### I

We first set out the factual background and lower court decision in this controversy. Because we are ruling on a 12(b)(6) motion to dismiss, we must take the allegations in the plaintiff's complaint as true. *See, e.g., Finlator v. Powers,* 902 F.2d 1158, 1160 (4th Cir.1990). Thus, we summarize the allegations of the complaint as follows.

John Doe is Jane Doe's uncle. As a child, Jane visited her uncle John's home in Lexington, North Carolina, where she was sometimes in his care. When Jane was between the ages of 7 and 12, John fondled Jane, had Jane fondle him, performed sex acts with Jane, and had a friend similarly abuse Jane. Jane told no one about the abuse, because John threatened to blame it on her and cause her to be punished. John stopped abusing Jane when another family member told him to. Jane turned 13 on April 19, 1968, so the last abusive act alleged in the complaint must have occurred before that time. Because of the abuse she had suffered and her reputation, which John spread, Jane was unable to lead a normal life, as men continually took advantage of her. However, Jane did not realize that the contact with John continued to affect her behavior and thinking. In 1989, Jane sought professional counselling for her anxiety, depression, and inability to form normal relationships with men. During her therapy, Jane came to realize that her psychological problems were the proximate result of John's abuse, and she was diagnosed as suffering from post traumatic

---

**1.** The magistrate judge below granted the plaintiff's motion to use pseudonyms for herself and her uncle.

stress disorder stemming from her childhood abuse.

Jane filed her complaint in March 1991, less than 3 years after discovering the causal connection between John's abuse and her psychological problems, but 23 years after the last instance of abuse. John filed a 12(b)(6) motion to dismiss. The district court granted the motion, applying the 10–year period of repose in North Carolina's statute of limitations, which states that "no cause of action shall accrue more than 10 years" after the defendant's last harmful act. N.C.Gen.Stat. § 1–52(16). The district court determined that Jane had had a total of 13 years in which to bring this action, because a plaintiff in North Carolina must bring a claim of emotional distress within three years of accrual. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325, 330 & n. 8 (1981); *King v. Cape Fear Mem. Hosp.*, 96 N.C.App. 338, 385 S.E.2d 812, 814 (1989), *review denied*, 326 N.C. 265, 389 S.E.2d 114 (1990) (both cases applying N.C.Gen.Stat. § 1–52(5)). Finally, because North Carolina tolls the statute of limitations until a claimant reaches the age of 18, N.C.Gen.Stat. § 1–17, the district court ruled that Jane's claim was barred at the latest after she turned 31, (13 years after she reached the age of 18), in 1986.

## II

### A

■ Jane argues first that the district court erred in not treating John's motion to dismiss as a motion for summary judgment. Jane alleges that the district court selectively looked beyond the pleadings in favor of the defendant. Because the district court looked at some documents outside the pleadings, Jane claims, it should have looked at all such documents and found that there are genuine disputes as to material facts in this case.

Jane argues that three statements in the district court's opinion show that the court looked outside the pleadings, although the court stated that it had not done so. First, Jane points out that the district court referred to her "promiscuous sexual course

of behavior," Slip op. at 2, and claims that the district court must therefore have considered Jane's deposition, affidavit, and supporting materials. John counters that the district court only inferred that Jane had been promiscuous from her complaint and brief to the court. Jane's complaint, paragraph 21, states:

Once improper sexual access to her ceased, and as a direct and proximate result of her sexual activity with Mr. Doe, other males took advantage of Jane Doe for their sexual gratification. Ms. Doe was unable to lead a normal life and unable to extricate herself from the reputation that Mr. Doe created for her and disseminated for her.

Jane's complaint later stated that she was unable to form normal relationships. Complaint ¶ 23. We conclude that the district court could have surmised that Jane had been promiscuous without looking outside the pleadings, and we find no reason to doubt the district court's word that it had properly confined itself to the pleadings in ruling on the motion to dismiss.

Next, Jane argues that the district court disagreed with her factual assertions, but the portion of the district court's opinion that Jane cites shows that the court only disagreed with Jane's legal argument:

This Court disagrees. Section 1–52(16) is not a separate statute of limitations. Rather, it is a repose provision meant to be applied to all personal injury or property damage cases, except those for medical malpractice, which fall under § 1–15(c), and for occupational disease claims, which have been excepted by case law.

Slip op. at 6. Finally, Jane claims that the district court's admonition that Jane's "pejorative tone" was inappropriate shows that the court must have looked at materials outside the pleadings. The district court's criticism, contained in a footnote in its opinion, stated:

The Court notes defendant's objection to the pejorative tone taken by plaintiff in her brief and admonishes plaintiff's counsel that such an approach is more appropriate for a closing argument to a

jury rather than a legal argument before a court.

Slip op. at 7 n. 3. The court's statement shows that it was addressing John's objection to Jane's brief and not any additional materials. In his reply memorandum in support of his motion to dismiss, John had objected to Jane's use of the terms "survivor" and "abuser" to refer to the parties. In all, there is no indication that the district court looked beyond the pleadings or failed to accept Jane's allegations as true, and we reject Jane's argument that the district court overlooked any genuine disputes of material facts. That conclusion leads us to the second issue, whether the district court erred in concluding that North Carolina's statute of limitations barred Jane's claim as a matter of law.

### B

■ Our function in this diversity case is to predict what the Supreme Court of North Carolina would decide were the statute of limitations issue presented to it.[2] Two sections of the North Carolina code are relevant to this issue. First, section 1–52(5) states that a three-year statute of limitations applies to "criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." North Carolina state courts have held that a cause of action for emotional distress falls under section 1–52(5). *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325, 330 & n. 8 (1981); *King v. Cape Fear Mem. Hosp.*, 96 N.C.App. 338, 385 S.E.2d 812, 814 (1989), *review denied*, 326 N.C. 265, 389 S.E.2d 114 (1990). Second, section 1–52(16) states:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1–15(c) [medical malpractice], shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to

have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C.Gen.Stat. § 1–52(16). We note two important aspects of this section, from the plain meaning of its language. The "shall not accrue until" clause, which is known as a "discovery provision," preserves a cause of action until a claimant has or should have discovered his harm. The final sentence, which is known as a "period of repose," establishes a fixed point after which a cause of action may not accrue even if the claimant has not discovered his harm. Construing sections 1–52(5) and 1–52(16) together, the district court concluded that a claimant has at most 13 years in which to bring a cause of action.

Jane has two legal theories to avoid this statute of limitations bar. First, Jane argues that sections 1–52(5) and 1–52(16) should not be construed together, and that the 10–year period of repose in 1–52(16) does not apply to 1–52(5). Instead, claimants with a cause of action under 1–52(5) have three years from the time they realize that they have been harmed to file their complaint, without any period of repose. Alternatively, if section 1–52(16) also applies, Jane argues that North Carolina's courts would create a judicial exception to the 10–year period of repose in that section. We will discuss each theory in turn.

Under Jane's first theory, section 1–52(5) alone applies to this case. Jane argues that the three-year limitations period in section 1–52(5) began to run in 1989, when she first discovered the connection between John's abuse and her psychological harm, not in 1968, when John stopped abusing her, or in 1973, when Jane reached the age of 18. This argument requires the court to read a "discovery provision" into section 1–52(5), which we decline to do for two reasons. First, the North Carolina General

---

**2.** We note that North Carolina is the only state in the Fourth Circuit that does not allow federal courts to certify questions of state law to the state's highest court. The certification procedure allows federal courts facing actual cases and controversies involving unresolved state law to obtain à definitive resolution, not an advisory opinion, from the state's highest court.

Assembly has not included a discovery provision in section 1–52(5). We believe that omission is significant because the General Assembly has included a discovery provision in other statutes such as section 1–52(16). Second, the North Carolina Court of Appeals has rejected a similar argument involving section 1–52(5). *See King v. Cape Fear Mem. Hosp.*, 96 N.C.App. 338, 385 S.E.2d 812 (1989), *review denied*, 326 N.C. 265, 389 S.E.2d 114 (1990). In *King*, the plaintiff sued for intentional infliction of emotional distress and other claims resulting from the medical care of her husband. Dissatisfied with the treatment the husband had received, the plaintiff and her family dismissed the husband's doctor on August 27, 1985. After the husband died, the plaintiff brought suit on August 29, 1988, three years and two days after the doctor was dismissed. The court rejected the plaintiff's argument that a medical malpractice discovery provision applied:

> Plaintiff also argues her complaint alleges a personal cause of action for intentional infliction of mental distress which is not barred by the statute of limitations. She claims this cause of action was also preserved by the discovery exception in G.S. 1–15(c). This argument has no merit. Because it is not specifically denominated under any limitation statute, a cause of action for emotional distress falls under the general three-year provision of G.S. 1–52(5). The record in the present case indicates that any intentional tortious conduct by the deceased's treating physician (defendant Hunt) must have taken place on or before 27 August 1985 when the doctor was dismissed. Plaintiff's failure to file her complaint by 27 August 1988 therefore resulted in the loss of any potential claim for emotional distress.

*Id.* at 814. In view of the *King* decision, which the Supreme Court of North Carolina declined to review, we predict that the state supreme court would not read a discovery provision into section 1–52(5) in this case. *See also Waddle v. Sparks*, 331 N.C. 73, 414 S.E.2d 22, 28–29 (1992) (applying three-year limitations period to bar employee's intentional infliction of emotional dis-

tress claim against employer). Therefore, under the express language of section 1–52(5), a three-year limitations period applied. Under section 1–17, that period began to run in 1973 when Jane reached the age of 18 and expired in 1976, barring this action.

■ Alternatively, if section 1–52(16) also applies, that section's period of repose would appear to bar this action. Jane argues that the North Carolina state courts would create a judicial exception to the period of repose. Here, Jane seeks to analogize to the exception for occupational disease claims that the state supreme court recognized in *Wilder v. Amatex Corp.*, 314 N.C. 550, 336 S.E.2d 66 (1985). In *Wilder*, the court construed the period of repose in section 1–15(b), the predecessor to section 1–52(16), in a case involving a plaintiff suffering from asbestosis:

> None of the cases toward which the statute was directed involved disease. They all involved situations in which it was possible to identify a single point in time when plaintiff was first injured. A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent.
>
> . . . .
>
> ... In light of the statute's purpose, the state of the law when the statute was enacted, and the deliberate omission of reference to disease as this statute made its way through the legislative process, we are satisfied that the legislature intended the statute to have no application to claims arising from disease. G.S. 1–15(b) having no application to this case, plaintiff's claim accrued on the date

he was diagnosed as having the disease asbestosis, and under G.S. 1–52(16) he had three years from that date to bring suit.

*Id.* at 70, 73. Jane argues that psychological injury from child abuse also cannot be linked to any one instance, at least not when, as here, the abuse occurred repeatedly over a five-year period.

The district court below distinguished *Wilder* on its facts, *see* Slip op. at 6–7, but we believe that some of the language set out above referring to latent diseases can be readily analogized to adult psychological harm stemming from child abuse. Instead of using a factual analysis, we predict that North Carolina courts would not extend *Wilder* to such harm for legal reasons and would apply the period of repose in section 1–52(16). First, the Supreme Court of North Carolina has acknowledged the potentially unfair result that periods of repose may cause:

> Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted. Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce.

*Black v. Littlejohn*, 312 N.C. 626, 325 S.E.2d 469, 474–75 (1985) (citations omitted). Second, in holding that the "unyielding and absolute barrier" in section 1–15(b) did not apply to occupational disease claims, the *Wilder* court found it significant that an earlier proposed version of section 1–15(b) had included claims of disease, while the statute as passed deliberately omitted any reference to disease. *Wilder*, 336 S.E.2d at 73. Here, because there is no evidence that the legislature deliberately omitted reference to emotional distress claims, that reason for excepting them from the period of repose does not exist. Indeed, in *Wilder* itself, the court stated that section 1–52(16), which replaced

the statute construed in *Wilder*, was "intended to be a statute of limitations governing all negligence claims." *Id.* at 69. By its terms, section 1–52(16) applies to "personal injury," a phrase that would seem to include emotional distress.

■ For these reasons, in light of the statement in *Wilder*, we feel constrained to predict that North Carolina courts would not create an exception to the period of repose in section 1–52(16) to preserve Jane's negligent infliction of emotional distress claim. As for Jane's intentional infliction of emotional distress claim, the Supreme Court of North Carolina recently stated that "applying the same standard to both torts promotes a symmetry desirable in this area of the law." *Waddle v. Sparks*, 331 N.C. 73, 414 S.E.2d 22, 27 (1992) (applying definition of "severe emotional distress" used in negligent infliction claims to intentional infliction claim). While that statement in *Waddle* did not involve a statute of limitations question, it suggests that the state supreme court would apply the period of repose to intentional infliction of emotional distress claims in the same manner as it would apply the period to negligent infliction of emotional distress claims, and we see no reason to predict that the two torts would not both be subject to the period of repose.

Besides *Wilder*, Jane argues that policy considerations should affect our prediction of whether North Carolina courts would create an exception to the period of repose in her case. Jane reasons that a period of repose bar to a claim such as hers is especially unfair because child abuse is widespread, usually without witnesses, rarely reported because the victim feels ashamed or intimidated or suppresses memories of the abuse, and not sufficiently deterred by criminal sanctions. While we agree that these points are compelling, they are appropriately addressed to a legislative, not a judicial, body.

### III

In the courtroom, cases involving adult survivors of child abuse present difficult

questions of proof and delicate issues of public policy. We predict that the Supreme Court of North Carolina would not create an exception to the state's statute of limitations or period of repose for such adults, but would instead await legislative action. A number of state legislatures have addressed this precise issue, and perhaps North Carolina will soon join the growing list.[3] Presently, because we find that either the three-year statute of limitations in section 1–52(5) or the period of repose in section 1–52(16) bars this action, the judgment of the district court is hereby

AFFIRMED.

**3.** The states that have enacted laws addressing civil actions by adult survivors of childhood sexual abuse are Alaska, California, Colorado, Connecticut, Iowa, Maine, Minnesota, Montana, Vermont, Virginia, and Washington. For the text and a discussion of those statutes, see Rebecca L. Thomas, Note, *Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations: A Call For Legislative Action,* 26 Wake Forest L.Rev. 1245, 1273–77 (1991). For a proposed legislative response for North Carolina, see *id.* at 1291–94.