**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CATHERINE MCNAIR, Ancillary
Administratrix for the Estate of
Edward Earl McNair,
<u>Plaintiff-Appellant,</u>

and

EDWARD EARL MCNAIR, deceased,
<u>Plaintiff,</u>

v.

No. 93-2528

LEND LEASE TRUCKS, INCORPORATED;
LEND LEASE DEDICATED SERVICES,
INCORPORATED,
<u>Defendants-Appellees,</u>

and

ROBERT MONROE, Administrator of
the Estate of Thomas Paul Jones;
THOMAS PAUL JONES, deceased,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Franklin T. Dupree, Jr., Senior District Judge.
(CA-93-305-5-D)

Argued: January 30, 1996

Decided: September 10, 1996

Before WILKINSON, Chief Judge, RUSSELL, WIDENER, HALL,
MURNAGHAN, ERVIN, WILKINS, NIEMEYER, HAMILTON,
LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge Hall wrote the majority opinion, in which Chief Judge Wilkinson and Judges Murnaghan, Ervin, Wilkins, Luttig, Williams, Michael, and Motz joined. Judge Widener wrote a separate concurring opinion. Senior Judge Phillips wrote a dissenting opinion in which Judges Russell, Niemeyer and Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Donald Haskell Beskind, BLANCHARD, TWIGGS, ABRAMS & STRICKLAND, P.A., Raleigh, North Carolina, for Appellant. John C. Millberg, MAUPIN, TAYLOR, ELLIS & ADAMS, P.A., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Karen M. Rabenau, BLANCHARD, TWIGGS, ABRAMS & STRICKLAND, P.A., Raleigh, North Carolina, for Appellant. Richard N. Cook, MAUPIN, TAYLOR, ELLIS & ADAMS, P.A., Raleigh, North Carolina, for Appellees.

_____

**OPINION**

HALL, Circuit Judge:

Catherine McNair, administratrix of the estate of Edward Earl McNair, brought an action in state court against Thomas Paul Jones and his employer, Lend Lease,[1] seeking damages for the wrongful death of her intestate. The action was removed on diversity grounds, and default judgment was entered against Jones. The court ruled that Jones was outside the scope of his employment at the time of the accident and, therefore, McNair had failed to state a claim against the employer under the doctrine of respondeat superior. Lend Lease's Rule 12(b)(6) motion to dismiss was granted, and McNair appeals.

_____

[1] In the complaint, Jones is described as an employee of both corporate defendants, Lend Lease Trucks, Inc., and Lend Lease Dedicated Services, Inc. In this opinion, these defendants are referred to collectively as "Lend Lease."

2

I

On appeal from an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we accept as true the facts alleged in the complaint. Doe v. Doe, 973 F.2d 237, 238 (4th Cir. 1992). These facts are that Thomas Paul Jones was employed by Lend Lease to drive a truck on interstate routes. On May 25, 1991, "before dusk,"[2] he stopped his truck on the side of a highway in North Carolina and walked across the highway to the Dry Dock Lounge. While there,"he began to consume alcoholic drinks." At 11:15 P.M., he left and began to cross the highway "in order to enter the tractor trailer" when he "suddenly darted in front of the motorcycle being operated by Plaintiff's decedent." The two collided, and McNair and Jones were killed. It was later determined that Jones' blood alcohol level was.28%, almost three times the legal limit for someone operating a motor vehicle.[3] The court held that Jones had deviated from the scope of his employment when he first stopped his truck or, alternatively, when he embarked on his drinking spree, and, further, that he had not returned to the scope at the time of the accident.

II

The plaintiff contends that Jones' negligence was the proximate cause of her decedent's death and that his negligence should be imputed to Lend Lease under the doctrine of respondeat superior. The district court ruled that, as a matter of law, Jones was outside the scope of his employment at the time of the collision, and, therefore, Lend Lease could not be held vicariously liable. We review this ruling de novo. Revene v. Charles County Comm'rs , 882 F.2d 870, 872 (4th Cir. 1989). With respect to questions of law, we must predict how the

_____

[2] Based on the complaint's allegations of stopping "before dusk" in late May, the court took judicial notice that this made out a claim that Jones initially stopped between 7:00 and 8:00 P.M.

[3] We adopt that portion of Judge Phillips' opinion for the panel majority that explained why it is proper to consider the fact of Jones' intoxication--a fact not appearing on the face of the complaint--in this appeal from a Rule 12(b)(6) dismissal. See McNair v. Lend Lease Trucks, Inc., 62 F.3d 651, 655-56 (4th Cir. 1995).

Supreme Court of North Carolina would rule. Doe , 973 F.2d at 240.**4** The sufficiency of the pleadings, however, is a procedural matter to which federal law applies, and our longstanding rule has been "that a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). Our task, then, is to first ascertain the substantive state law and then to apply it to determine whether, on the record before the district court, the plaintiff could prove any set of facts that would permit a finding of respondeat superior liability.

III

The fundamental principle of respondeat superior is simply stated: An employer is liable for his employee's torts that occur while the employee is "acting in the scope of his employment or about his master's business." Parrott v. Kantor, 6 S.E.2d 40, 43 (N.C. 1939). An employer can escape liability, however, under an equally well established rule: An employee who deviates from his work to engage "in some pursuit of his own" is not acting within the scope of his employment. Id. The deviation, however, must be complete:

> Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility; but if there is a total departure from the course of the master's business, the master is no longer answerable for the servant's conduct. . . . The departure commences when the servant definitely deviates from the course or place where in the performance of his duty he should be.

Hinson v. Virginia-Carolina Chemical Corp., 53 S.E.2d 448, 452 (N.C. 1949) (internal citations omitted). Scope questions have been characterized as mixed questions of law and fact. Sandy v. Stackhouse

_____

**4** We note, as we have previously, that North Carolina is the only state in the Fourth Circuit that does not allow federal courts to certify questions of state law to its highest court. See Doe, 973 F.2d at 240 n.2.

4

Inc., 128 S.E.2d 218, 221 (N.C. 1962). With these basic principles in mind, we turn to the facts.

A

The district court held that Jones left the scope of employment when he stopped on the side of the road and left the cab of his truck to walk to the lounge. We disagree with the court's view that Jones "was on a mission of his own and was not in the course and scope of his employment" as soon as he left the truck to eat. During arguments on the motion to dismiss, Lend Lease's lawyer conceded that a truck driver on an extended trip is "probably within the scope of his employment" when he takes "any reasonable breaks [ ] for meals or to rest or for whatever reason or purpose."

The district court cited as a general rule that an employee driving his own or even his employer's vehicle to a place where he intends to eat is not ordinarily within the scope of his employment until he resumes his job duties. This is indeed the general rule, the theory being that the employee furthers no interests of his employer during a lunch break and is free to pursue his own interests during the allotted period. See generally W.E. Shipley, Annotation, Employer's Liability for Employee's Negligence in Operating Employer's Car in Going To or From Work or Meals, 52 A.L.R.2d 350, 381 § 11 (1957). In Sandy, decedent was on a line crew that was working out of town repairing hurricane damage. After the day's work was completed and he had returned to his motel, he decided to go for beer and soda at a store 1/4 mile from the motel. As he was returning to the motel, he was killed in an automobile accident. He was denied workers' compensation on the ground that he was off duty and the accident did not happen while the employee was "engaged in the discharge of some function or duty which he [was] authorized to undertake and which [was] calculated to further, directly or indirectly, the master's business." Id. (citation omitted).**5**

_____

**5 Sandy** has not been assiduously followed by the North Carolina courts. See, e.g., Martin v. Georgia-Pacific Corp., 167 S.E.2d 790, 795 (N.C. App. 1969) (affirming workers' compensation death benefits to survivors of employee who was attending a training seminar out of town and was killed while walking to a restaurant).

A long-haul trucker, however, often has no choice but to stop on the road to eat. See Roberts v. Burlington Industries, Inc., 364 S.E.2d 417, 423 (N.C. 1988) ("We have held that when an employee's duties require him to travel, the hazards of the journey are risks of the employment.") (citing Hinkle v. City of Lexington, 79 S.E.2d 220 (N.C. 1953)). In Jones' case, where and when he stopped was no doubt dictated in large part by the route and length of the driving assignment. Moreover, it is likely that government regulation and company policy required stops at regular intervals and of some minimum length. See, e.g., 49 C.F.R. § 395.3 (1990) (I.C.C. requires that interstate drivers certify that they have obtained sufficient rest during course of driving assignment). It may be, then, that stopping and leaving his truck when and where he did would not take him outside the scope of his employment. If Jones deviated as a matter of law, the deviation must be found at some point farther into the evening.

B

If stopping and taking a "reasonable break" does not take Jones outside the scope, is a 3-4 hour break unreasonable as a matter of law? We are unable to say so from the record before us, for many of the same reasons that we cannot say that any break does not automatically remove a driver from the scope. The question of what is reasonable must be informed by a host of facts that have yet to be developed: What rules and policies applied to his situation? How far had he driven that day, and how much farther had he to go? When was his last stop, and when would he next have a chance to stop? See, e.g., Turnbow v. Hayes Freight Lines, 145 N.E.2d 377, 380 (Ill. App. 1957) (holding that an interstate driver en route to motel for rest stop required by I.C.C. and by employer rules was within scope of employment). The temporal and spatial circumstances of this case do not compel a finding that Jones was outside the scope of his employment at the time of the accident.

C

The next point at which the district court found a departure from the scope of his employment was "when [Jones] chose to remain in the bar and consume alcoholic beverages until 11:15 p.m. . . ." This alternative holding involves a "frolic" that is unlike the usual case of

6

an employee's detour from the assigned or most direct route to accomplish some purely personal purpose. There are, however, North Carolina cases that do involve employees who have caused injuries while engaged in what might be characterized as "conduct frolics." Although the injury-causing conduct occurred during business hours and on the business premises, some frolics have been found to fall outside the scope of employment. See, e.g., Medlin v. Bass, 398 S.E.2d 460 (N.C. 1990) (sexual assault on student by school principal in his office during school hours); Wegner v. Delly-Land Delicatessen, Inc., 153 S.E.2d 804 (N.C. 1967) (store employee's shooting of a customer over personal dispute unrelated to employment); Stanley v. Brooks, 436 S.E.2d 272 (N.C. App. 1993) (sexual assault of customer by car salesman during test drive), rev. denied, 442 S.E.2d 521 (1994); but see Edwards v. Akion, 279 S.E.2d 894, 898 (N.C. App. 1981) (holding that assault by employee against customer, arising out of dispute concerning services that employee was performing, not outside scope of employment as a matter of law). Jones' alleged negligence is altogether different from the willful assaults in these cases.

In carving out a "category of intentional tortious acts designed to carry out an independent purpose" of the employee, the North Carolina courts have been careful to note that "[w]here the employee's actions are conceivably within the scope of employment and in furtherance of the employer's business, the question is one for the jury." Medlin, 398 S.E.2d at 463-64. We have been unable to uncover any cases from North Carolina that hold that an employee who becomes intoxicated while otherwise within the scope of his employment is, as a matter of law, outside the scope of his employment by reason of such intoxication. In the absence of controlling precedent, we are unwilling to predict that the Supreme Court of North Carolina would extend the rule established in the context of intentional torts to cover Jones' situation.

IV

Even if an employee who spends several hours drinking alcoholic beverages can be said to have embarked on a frolic of his own, the case is not over. The complaint alleges sufficient facts to permit a finding that, even had he left the scope at some point in the evening,

7

Jones had returned to the scope of his employment prior to the accident.

In discussing whether Jones might have returned to the scope of his employment at some point before the accident, the district court located the physical point of return at the cab of the truck. It follows, then, that drunk or not, an employee behind the wheel and headed toward his assigned destination is "about his master's business."[6] We agree with the district court to the extent that its holding can be read to reject the contention that the level of intoxication alone can define when an employee is frolicking. See, e.g., Bejma v. Dental Dev. and Mfg. Co., 356 F.2d 227 (6th Cir. 1966) (intoxicated travelling salesman on return trip within scope). We disagree, however, with the point of return established as a matter of law by the district court.

The question devolves to this: Even if it is assumed that Jones had deviated from the scope of his employment at some point during his drinking spree, is there any set of facts under which it could be found that he had returned to the scope of his employment before the accident? We predict that the Supreme Court of North Carolina would hold that there is.

One court has developed a two-pronged test to determine whether a frolicking employee has re-entered the scope of his employment: (1) Had the employee formed the intention to act in furtherance of his employer's business, and (2) was such an intention coupled with a

_____

[6] **Butler v. Baker**, 628 N.E.2d 98 (Ohio App. 1993), is instructive. The employee in that case drove off the job site to pick up lunch for a work crew. Instead of returning promptly, he stayed at the restaurant and drank for four and a half hours. When he finally returned to the site after the end of the working day, the crew had departed. He had begun to drive the truck to the company garage when he caused an accident. The court upheld a judgment on the jury verdict finding that the employee was within the scope of his employment when the accident occurred. See, also, Sloma v. Pfluger, 261 N.E.2d 323 (Ill. App. 1970) (scope issue properly given to the jury, where evidence showed that employee left job site in his own car at 3:30 P.M. to buy materials for the next day's work, stopped first in a tavern for two and a half hours where he consumed five or six beers, left the tavern intending to pick up the supplies, and caused an accident at 6:45).

8

reasonable connection in time and space with the work in which he should have been engaged? Prince v. Atchison, T. and S. F. Ry. Co., 395 N.E.2d 592, 596 (Ill. App. 1979). Under this test, which is not inconsonant with North Carolina law, the plaintiff has alleged sufficient facts to survive the motion to dismiss. Jones may well be found to have formed the intent to resume his driving duties, an intention that conceivably could be found from nothing more than the fact that he was walking toward his truck. Such intent, if found, could also be found to have been reasonably connected to his assigned task. Jones was mere yards away from his truck at the time of the accident, and he may have intended to resume driving as soon as he reached the truck.

We are not faced with the common situation in which an employee has travelled miles off his assigned route to visit family or friends. See, e.g., Hinson, 53 S.E.2d at 448. This is not a case in which an employee drank too much at a job-related social function and caused an accident on the way home. See Camalier v. Jeffries, 460 S.E.2d 133, 140-41 (N.C. 1995) (affirming summary judgment for employer). Jones was not at a social function; he was on that highway on that date because that was, presumably, what his employer required of him. That he had to stop and stay for as long as he did may also have been required. As we have already noted, circumstances may well have dictated that he had to park his truck where he did and cross the highway to reach the restaurant. Even if Jones had left the scope of his employment by staying too long to drink, we cannot say that a set of facts could not be shown to prove that he had returned to his master's business when he began walking towards his truck.

The judgment is vacated, and the case is remanded for further proceedings.

VACATED AND REMANDED

WIDENER, Circuit Judge, Concurring:

I concur in the result.

9

PHILLIPS, Senior Circuit Judge, dissenting:

I respectfully dissent for reasons expressed in the vacated panel opinion. 62 F.3d 651 (4th Cir. 1995).

Judge Russell, Judge Niemeyer and Judge Hamilton join in this dissent.

10