PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NATIONWIDE MUTUAL INSURANCE
COMPANY,
                        *Plaintiff-Appellee,*

v.                                               No. 01-1217

WILLIAM POWELL; DEBBIE POWELL,
                        *Defendants-Appellants.*

NATIONWIDE MUTUAL INSURANCE
COMPANY,
                        *Plaintiff-Appellee,*

v.                                               No. 01-2390

WILLIAM POWELL; DEBBIE POWELL,
                        *Defendants-Appellants.*

Appeals from the United States District Court
for the District of South Carolina, at Florence.
Patrick Michael Duffy, District Judge.
(CA-00-1303-4-23)

Argued: April 2, 2002

Decided: May 31, 2002

Before WILKINS, TRAXLER, and GREGORY, Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkins wrote
the opinion, in which Judge Traxler and Judge Gregory joined.

**COUNSEL**

**ARGUED:** Stuart Wesley Snow, DUSENBURY, SNOW & MCGEE, P.A., Florence, South Carolina, for Appellants. John Robert Murphy, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellee. **ON BRIEF:** E. Raymond Moore, III, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellee.

---

**OPINION**

WILKINS, Circuit Judge:

William Powell (William) and his wife, Debbie, appeal a district court order granting summary judgment against them in an action brought by Nationwide Mutual Insurance Company (Nationwide) seeking a declaration that an automobile policy it issued to William did not provide underinsured motorist ("UIM") coverage. We reverse and remand for further proceedings.[1]

I.

Viewing the record in the light most favorable to the Powells, as we must in deciding the appropriateness of granting summary judgment to Nationwide, *see Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999), the facts, for purposes of this decision, are as follows. In February 1998, Debbie decided to change insurers and to increase coverage on her vehicle. She contacted a Nationwide agent and informed the agent that she wanted "full coverage." J.A. 104 (internal quotation marks omitted). Debbie showed the agent the declarations page from her then-current policy, which indicated that the policy contained UIM coverage. Nationwide subsequently issued her a policy with $100,000 liability coverage and $35,000 UIM coverage.

---

[1]Because we reverse the order granting summary judgment to Nationwide, we dismiss as moot the Powells' appeal of the denial of their motion for relief from judgment.

In June 1998, William authorized Debbie to obtain a rate quote and an application from Nationwide for coverage of his two vehicles. Debbie contacted the Nationwide agent from whom she had obtained her own policy and informed the agent that her husband desired liability coverage of $100,000 on his two vehicles and that he wanted "full coverage" as he had with his then-current insurer. Debbie met with the agent's assistant, Sherry Volz, and at Volz's direction signed William's name beside several "X" marks on various forms. One of the signatures was in a space indicating that the insurance applicant (William) did not wish to purchase UIM coverage. Another signature was in a space confirming that the applicant had read the explanation of UIM coverage contained in the form. Debbie did not know what UIM coverage was, nor did Volz explain it to her. Additionally, Volz never asked Debbie whether William had authorized her to apply for insurance or reject UIM coverage on his behalf, and Debbie never told Volz that she was so authorized.

William was displeased when he learned that Debbie had applied for a policy, but when Debbie assured him that the resulting policy would contain the "full coverage" that he desired, he chose not to rescind the application. Accordingly, when Volz contacted him, William told her that he wanted the policy. (Volz did not ask William whether Debbie had been authorized to act on his behalf, nor did she specifically inquire as to whether William desired UIM coverage.) Nationwide subsequently issued the policy with William listed as the named insured and Debbie listed as a driver. The policy included, *inter alia*, comprehensive, collision, towing, and rental-car reimbursement coverage. Although the policy, which Nationwide sent William, indicated that it did not provide UIM coverage, William never read the policy and continued to believe that UIM coverage was included.

William never rescinded, modified, or canceled the policy, and he paid the premium. Shortly after he had renewed the policy for an additional six months, Debbie was driving one of William's vehicles when she was involved in an accident caused by another driver and sustained injuries in excess of the other driver's limits. When she subsequently made a claim under William's policy, Nationwide made payments for property damage, towing, and automobile rental but denied that the policy provided UIM coverage.[2] Nationwide then

---

[2]The record does not reflect whether at the time of the accident Debbie still had the policy containing UIM coverage that she had purchased from Nationwide on her own vehicle in February 1998.

instituted this action, and the district court subsequently granted summary judgment to Nationwide.

## II.

Because the district court sat in diversity, we must apply South Carolina law and predict how the South Carolina Supreme Court would decide this issue.[3] *See Doe v. Doe*, 973 F.2d 237, 240 (4th Cir. 1992). South Carolina law provides that automobile insurance carriers "shall . . . offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage." S.C. Code Ann. § 38-77-160 (Law. Co-op. 2002). The South Carolina Supreme Court has formulated a four element test for determining whether an insurer has complied with its duty to offer optional coverages:

> (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 354 S.E.2d 555, 556 (S.C. 1987). The insurer's failure to satisfy this test nullifies any rejection of UIM coverage by the insured, *see Hanover Ins. Co. v. Horace Mann Ins. Co.*, 389 S.E.2d 657, 659 (S.C. 1990), and requires that the policy "be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured," *Butler v. Unisun Ins. Co.*, 475 S.E.2d 758, 760 (S.C. 1996).

A statute apparently passed in response to *Wannamaker* provides guidelines for the forms that insurers must use to offer UIM coverage to "new applicants." S.C. Code Ann. § 38-77-350(A) (Law. Co-op. 2002); *see Rabb v. Catawba Ins. Co.*, 528 S.E.2d 693, 695 (S.C. Ct. App. 2000) (stating that statute was apparently passed in response to *Wannamaker*). Additionally, subsection (B) of this statute provides:

---

[3]The parties agree that South Carolina law applies.

> If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.

S.C. Code Ann. § 38-77-350(B) (Law. Co-op. 2002). However, presentation of a proper UIM coverage rejection form to a named insured's spouse does not constitute a meaningful offer of UIM coverage if the spouse is not acting as the named insured's agent. *See Allstate Ins. Co. v. Estate of Hancock*, 545 S.E.2d 845, 848 (S.C. Ct. App. 2001); *see also id.* at 848 n.4 (stating in dictum that it "may be possible" for a named insured's spouse to effectively reject UIM coverage on behalf of the named insured if the spouse is authorized to act on the named insured's behalf).

Before the district court, Nationwide contended that Debbie was acting as William's agent when she procured the policy and that the presentation of the UIM form to her constituted a meaningful offer of UIM coverage.[4] The district court agreed that an offer of UIM coverage made to a person acting as the named insured's agent could constitute a meaningful offer of UIM coverage. The court concluded, however, that Nationwide failed to demonstrate as a matter of law that Debbie had either actual or apparent authority to reject UIM coverage on her husband's behalf.[5]

---

[4]It is undisputed that the content of the UIM form met the requirements of § 38-77-350(A).

[5]Nationwide claims that the district court erred in concluding that Nationwide had not established as a matter of law that Debbie had actual authority to procure the insurance policy on her husband's behalf. We disagree. Because the Powells forecasted evidence that William only authorized Debbie to obtain a rate quote and an application from Nationwide, the district court properly identified a genuine issue of fact regarding Debbie's agency. *See Estate of Hancock*, 545 S.E.2d at 848 n.4 (stating that when wife rejects UIM coverage for policy in which husband is named insured, existence and scope of agency relationship between spouses are questions of fact).

Nationwide also argued that even if Debbie lacked authority to procure the policy on her husband's behalf, the policy should not be reformed to include UIM coverage because William ratified Debbie's rejection of UIM coverage by accepting the policy without complaint. The district court adopted this position and granted summary judgment to Nationwide on this basis.

### III.

Ratification is the "adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent." *Lincoln v. Aetna Cas. & Sur. Co.*, 386 S.E.2d 801, 803 (S.C. Ct. App. 1989). Ratification occurs when three elements are present: (1) acceptance by the putative principal (William) of the benefits of acts by the putative agent (Debbie), (2) full knowledge of the facts by the putative principal, and (3) circumstances or an affirmative election demonstrating the putative principal's intent to accept the unauthorized arrangements. *See id.*

The Powells do not deny that William ratified Debbie's purchase of the policy, nor do they deny that the form presented to Debbie, on which she signed William's name, would have been sufficient had it been presented to and signed by William himself. For its part, Nation-

---

Although not raised by Nationwide, we have considered whether the Powells should be estopped from denying that Debbie was authorized to reject UIM coverage by virtue of her signing William's name to the appropriate forms. However, even if Debbie's signing of William's name constituted an implicit representation that she was authorized to do so, a party cannot be equitably estopped by virtue of her misrepresentation when the party to whom the misrepresentation was made could have acquired the true facts had it acted with reasonable diligence. *See Adams v. Adams*, 66 S.E.2d 809, 812 (S.C. 1951). To determine whether Debbie had possessed the authority to reject UIM coverage on William's behalf, Nationwide needed only to ask William. Although Volz did subsequently ask William whether he wanted to accept the policy, she never asked him whether Debbie had possessed the authority to reject UIM coverage. Nor did William have any reason to know that that additional fact might carry legal significance. Accordingly, no estoppel applies here.

wide does not deny that William was a new applicant. Nor does it dispute that even when a named insured accepts an insurance agreement not containing UIM coverage, the policy must be reformed to include UIM coverage if no meaningful offer of UIM coverage has been rejected by the named insured.

Where the parties disagree is on the question of whether Nationwide's offer of UIM coverage to Debbie was a "meaningful offer." The Powells contend that no meaningful offer was made because the offer, including the information accompanying the offer, was presented not to the named insured, but to another person who, at least for purposes of summary judgment, was not authorized to act on his behalf. Nationwide responds that because the form it utilized was a proper one, its offer to Debbie was a meaningful offer as a matter of law. We agree with the Powells that Nationwide has not shown as a matter of law that the offer was meaningful.

As we have stated, in order to be a "meaningful offer" of UIM coverage, an offer must "intelligibly advise the insured of the nature of" UIM coverage. *Wannamaker*, 354 S.E.2d at 556; *see Estate of Hancock*, 545 S.E.2d at 848 (concluding that "no [meaningful] offer was made" when UIM form was presented to and signed by spouse of named insured who was not authorized to reject UIM coverage); *see also McDonald v. S.C. Farm Bureau Ins. Co.*, 518 S.E.2d 624, 626 (S.C. Ct. App. 1999) (noting "legislature's intent that all named insured be offered UIM coverage"). Nationwide's presentation of the UIM form to Debbie clearly did not intelligibly advise *William* (the named insured) about UIM coverage. Indeed, the Powells offered evidence that William made the decision to accept the policy without ever having seen the UIM form.

Nationwide maintains that it would be unjust to permit the Powells to obtain the benefits of the policy Debbie procured without binding them to Debbie's rejection of UIM coverage. But this outcome is no more unfair than the result we would have if William had applied for the policy himself and specifically rejected an offer of UIM coverage, but Nationwide had failed to intelligibly advise him concerning the offer. In both cases, William would have entered into an agreement that did not contain UIM coverage. But in both cases, Nationwide's failure to properly advise William regarding UIM coverage would

deprive its UIM coverage offer of any legal effect and require that the policy be reformed. While the results in both cases might be viewed as undeserved windfalls for the Powells, a contrary result in either case would allow the insurer to avoid its duty to provide the critical UIM information in a commercially reasonable manner to the named insured, the individual who has the sole authority to decide whether to purchase UIM coverage.[6]

Nationwide also contends that as a matter of law § 38-77-350(B) prevents reformation of the policy. We disagree. Nationwide has failed to demonstrate as a matter of law that it complied with that statute since the UIM form presented to Debbie was not, as the statute requires, "completed and executed by" William. Moreover, even if the statutory text could be construed to bar reformation when the named insured has ratified a putative agent's unauthorized rejection of UIM coverage, such an interpretation would be directly at odds with the purpose of the meaningful-offer requirement for the reasons already discussed. Accordingly, we decline to interpret the statute in that manner. *See McDonald*, 518 S.E.2d at 626 (stating that "[a] statute must receive a practical and reasonable interpretation consonant with the design of the legislature" (internal quotation marks omitted)).

IV.

In sum, we conclude that the district court erred in holding as a matter of law that Nationwide's presentation of the UIM form to Debbie constituted a meaningful offer of UIM coverage. Accordingly, we reverse the grant of summary judgment in favor of Nationwide and remand for further proceedings.

*REVERSED AND REMANDED*

---

[6]Because the Powells have offered evidence that Debbie was not authorized to reject UIM coverage on William's behalf, we do not address whether presentation of the appropriate form to someone authorized by the named insured to make the UIM coverage decision would constitute a meaningful offer.