Tewauna PATTERSON, Plaintiff,

v.

Robert A. MCDONALD, Secretary,
U.S. Department of Veterans
Affairs, Defendant.

1:15CV888

United States District Court,
M.D. North Carolina.

December 8, 2016

Daniel F. Read, Durham, NC, for Plaintiff.

Steven N. Baker, U.S. Attorney's Office, Greensboro, NC, for Defendant.

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion of Defendant Robert A. McDonald, Secretary of the United States Department of Veterans Affairs, to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 5.) For the reasons set forth below, the motion will be granted, but the complaint will be dismissed without prejudice because the court cannot ascertain whether the pleading deficiencies are curable.

According to the complaint, which is viewed in the light most favorable to Plaintiff Tewauna Patterson: Patterson was a nurse for the Durham Veterans Affairs Medical Center ("DVAMC"). Because of anonymous complaints about her as charge nurse and due to "a period of conflict with employees she was responsible for supervising," DVAMC "reassigned and demoted" her "within the hospital's extended care nursing facility" on June 1, 2009. (Doc. 1, ¶¶ 4, 5.) Patterson consequently became "extremely depressed," took leave from that job "[o]n the advice of her primary mental health provider," and subsequently requested another assignment to a different area of the hospital "as a reasonable accommodation for her asserted disability" of "Adjustment Disorder and Mixed Anxiety and Depressed Mood." (Id. ¶¶ 5, 7, 8, 10.) Her request was denied. (Id. ¶ 11.) She also applied for a number of other open positions, but was not hired. (Id. ¶¶ 8, 9.) Her mental health provider "did not clear her to return to the extended care nursing facility" to which she had been reassigned. (Id. ¶ 12.) Thus, having exhausted her leave, she was denied leave without pay, considered absent without leave, and terminated on April 16, 2010. (Id. ¶ 9.) Patterson alleges she was a "good employee" and was "qualified for many positions in the hospital." (Id. ¶ 11.) She claims she was wrongfully discriminated against and terminated because of her disability in violation of the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12101 et seq. (Doc. 1, ¶ 16.) It also appears that she alleges a failure to accommodate under the Rehabilitation Act. (Id. ¶¶ 8, 10.)

 Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citations omitted), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To be facially plausible, a claim must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be sure, " 'an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss,' because '[t]he prima facie case . . . is an evidentia-

ry standard, not a pleading requirement.' " McCleary–Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584 (4th Cir. 2015) (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).[1]

 While "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor," Estate of Williams–Moore v. All. One Receivables Mgmt., Inc., 335 F.Supp.2d 636, 646 (M.D.N.C. 2004) (citing McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996)), this "does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim," id. Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

 The Rehabilitation Act is the "exclusive means by which a plaintiff may raise" a disability discrimination claim against a federal agency, Brown v. Henderson, 6 Fed.Appx. 155, 156 (4th Cir. 2001) (quoting Spence v. Straw, 54 F.3d 196, 197 (3d Cir. 1995)),[2] but applies the same standard as that of the ADA, Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir. 1999). A wrongful discharge claim under the Rehabilitation Act requires that a plaintiff demonstrate that (1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circum-

---

1. "[T]he Supreme Court in Swierkiewicz applied a different pleading standard" from the one announced by Iqbal and Twombly, id. at 586 (citing Robertson v. Sea Pines Real Estate Cos., 679 F.3d 278, 288 (4th Cir. 2012)), but Iqbal and Twombly "did not overrule Swierkiewicz's holding that a plaintiff need not plead the evidentiary standard for proving [an

employment discrimination] claim," id. (citations omitted).

2. Unpublished decisions of the Fourth Circuit are not binding precedent but "are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted).

stances of the discharge raise a reasonable inference of unlawful discrimination. See Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (reciting the elements of a wrongful discharge claim under the ADA).

■ Here, Patterson's complaint fails in several respects to allege facts that, accepted as true, would state a plausible claim for relief.

In particular, Patterson fails to allege facts suggesting that her anxiety disorder is a disability. Under the Rehabilitation Act, a person is disabled who (i) has "a physical or mental impairment that substantially limits one of more major life activities of [the person];" (ii) has "a record of such impairment;" or (iii) is "regarded as having such an impairment." 42 U.S.C. § 12102(1); see 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(j)(1)(ii). A substantially limiting impairment is one that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 573 (4th Cir. 2015) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

While Patterson alleges she suffers from "Adjustment Disorder and Mixed Anxiety and Depressed Mood," she fails to allege any facts that suggest that her alleged anxiety and depression substantially limit any major life activity, especially her ability to work. According to Patterson, she was terminated from her initial position because of anonymous complaints about her work and because of conflict between her and employees she was responsible for supervising—charges Patterson does not allege were false. She was reassigned to "the other floor of the extended care nurs-

ing facility," a change she characterizes as a "demotion" but which she opposes not for that reason (on the contrary, she states she is "willing to accept a demotion" (Doc. 1, ¶ 8)), but because her mental health care provider "did not clear her to return to the extended care nursing facility" (id. ¶ 12). Thus, "[o]n the advice of her primary mental health provider," she took leave from her job (id. ¶ 7) and asked for a reassignment to "a different area of the hospital" as an accommodation for her asserted disability (id. ¶ 8).

■ Patterson makes no further allegation concerning the impact of her anxiety disorder on her life or work. The problem is that her complaint makes clear not only that her disability fails to prevent her from working, but that she is capable (she claims) of performing hundreds of other jobs in the hospital, *as long as they are not in the same extended nursing care facility.* (Id. ¶ 11.) In fact, she concedes that "it was the location of the employment, not the specific duty, that was in question." (Doc. 9 at 6.) Patterson alleges nothing about how the location could possibly be related to her alleged mental health condition. It is *conceivable* that her mental health condition may limit her ability to perform the jobs in that facility. But that would be pure speculation and seems especially unlikely in light of her allegations that she was able to fill "many," indeed "hundreds," of other positions at the hospital and her prior conflicts with coworkers at the same facility. Quite to the contrary, her complaint suggests strongly that it is her relationships with her coworkers that she finds stressful. But, "it is well-established that the inability to work with particular co-workers or supervisors does not create a substantial limitation on the major life activity of working." Frantz v. Shinseki, No. 1:10CV275, 2012 WL 259980, at *8 (M.D.N.C. Jan. 27, 2012) (citing Weiler

v. Household Fin. Corp., 101 F.3d 519, 524–25 (7th Cir. 1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress" and if plaintiff "can do the same job for another supervisor, she can do the job, and does not qualify under the ADA"); Siemon v. AT & T Corp., 117 F.3d 1173, 1176 (10th Cir. 1997) (holding that a mental impairment preventing plaintiff from "working under a few supervisors within the organizational structure of one major corporation ... is far too narrow to constitute a 'class of jobs'"); Palmer v. Circuit Court of Cook Cty., 117 F.3d 351, 352 (7th Cir. 1997) ("[A] personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, ... even if it produces anxiety and depression, as such conflicts often do.")); see also Metro v. Lewis Gale Clinic, No. 7:01CV00936, 2002 WL 32833260, at *4 (W.D. Va. 2002) (rejecting claim of nurse who was transferred who admitted she was "fully capable of doing [her] job as a nurse" but claimed she was incapable of performing a certain job as a float nurse at a certain facility of defendant's under a certain supervisor). Thus, Patterson fails to allege facts rendering her conclusion of disability plausible in her instance.

■ In a related fashion, Patterson provides no factual basis to allow the court to draw a plausible inference that her discharge was a result of unlawful discrimina-

tion. "This element is far from perfunctory: merely 'a conclusory statement that there was no other reason for [the plaintiff's] discharge' is insufficient." Calloway v. Durham Cty. Pub. Sch. Bd. of Educ., 2016 WL 634878, at *10 (M.D.N.C. Feb. 17, 2016) (quoting Adams v. Shipman, No. 1:13CV858, 2014 WL 4924299, at *7 (M.D.N.C. Sept. 30, 2014)) (citing Rocha v. Coastal Carolina Neuropsychiatric Crisis Servs., P.A., 979 F.Supp.2d 670, 679 (E.D.N.C. 2013)). Patterson alleges that she was demoted after having been complained about and after "a period of conflict with employees she was responsible for supervising." (Doc. 1, ¶¶ 4–5.) She asked DVAMC to reassign her to another area of the hospital as an accommodation and applied for a number of open positions. On her healthcare provider's advice, she then took a leave of absence, which she subsequently exhausted. DVAMC then placed her on "AWOL" status, and she was terminated six months later. The only fact that supports the inference that DVAMC terminated Patterson because of her disability is that she asked for an accommodation (thus, presumably, informing DVAMC of her alleged disability) before DVAMC discharged her. She offers no other facts that, if true, would support a finding that she was discharged because of her disability.[3]

■ Finally, Patterson's accommodation claim suffers from a similar deficiency. "[I]n order for a plaintiff to es-

3. Patterson also alleges only a conclusory recital of the element that she was a "qualified" employee who was fulfilling her employer's legitimate expectations when she was discharged. To be "qualified," Patterson must be able to "perform the [position's] essential functions," with or without accommodation, 42 U.S.C. § 12111(8), and must satisfy the position's "requisite skill, experience, education and other job-related requirements," 6 C.F.R. § 15.3(e)(3). She alleges that she "had

been a good employee and was qualified for many positions in the hospital." (Doc. 1 at ¶ 11.) This is a "[t]hreadbare recital[ ]" of this element. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937; cf. Spivey v. TIMCO Aviation Servs., 2015 WL 5511056, at *3 (M.D.N.C. Sept. 17, 2015) (noting that the plaintiff "alleged no facts showing that he was performing the essential functions of his job"), aff'd 629 Fed. Appx. 575 (4th Cir. 2016).

tablish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations.'" Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001)) (alterations in original). While the issue at the present stage is not prima facie proof, Patterson nevertheless fails to make such a claim plausible because she makes no factual allegation to even suggest that her request for an accommodation was reasonable.

As in Frantz, the only requested accommodation Patterson sought was an alternate worksite and apparent reassignment to a position with different coworkers to alleviate her stress. As another judge in this district aptly put it, such a request is unreasonable as a matter of law:

> A reassignment may be considered a reasonable accommodation under the Rehabilitation Act if an employee becomes unable to perform the essential functions of his or her position. However, an employer is not required to provide an aggravation-free or stress-free environment, or to reassign an employee away from any supervisor or coworker who may cause stress or conflict.

Frantz, 2012 WL 259980, at *8 (citing Newby v. Whitman, 340 F.Supp.2d 637, 657–58 (M.D.N.C. 2004)); see also Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998) (noting that "by asking to be transferred away from individuals who cause him prolonged and inordinate stress, [the plaintiff] is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility. Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to non-disabled persons." (citation omitted)); Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 384 (2d Cir. 1996) (holding that the failure to reassign an employee to a different supervisor did not violate the reasonable accommodation requirement of the ADA and the Rehabilitation Act).

Here, Patterson's complaint fails to provide any factual information to make plausible that it is her alleged disability that she seeks to have accommodated and not her refusal or inability to work in the extended care nursing facility with her past coworkers.

Patterson cursorily alleges that she was "regarded as" having a disability. (Doc. 1, ¶ 16.) This allegation cannot support a claim for failure to accommodate. As this court has previously held, "the 2008 Amendments to the ADA[ ] ... state that '[a] covered entity ... need not provide a reasonable accommodation ... to an individual who [is merely regarded as disabled].'" Blackburn v. Trs. of Guilford Tech. Cmty. Coll., 733 F.Supp.2d 659, 665 (M.D.N.C. 2010) (quoting 42 U.S.C. § 12201(h)); see also Rhodes v. Comcast Cable Communications Management, LLC, Civil Action No. GLR–14–1824, 2016 WL 4376653, at *9 n.9 (D. Md. Aug. 17, 2016) (acknowledging there is no failure to accommodate claim based on a "regarded as disabled" theory). Thus, to go forward on her failure to accommodate claim, there must be some reason to believe that Pat-

terson has "a physical or mental impairment that substantially limits one of more major life activities" or has "a record of such impairment." 42 U.S.C. § 12102(1).

For all these reasons, the court finds that Patterson's complaint fails to state a claim upon which relief can be granted. Patterson has not moved to amend her complaint. Nevertheless, because the pleading is so lacking in critical facts and the court cannot discern whether the defects can be cured, the complaint will be dismissed without prejudice.

IT IS THEREFORE ORDERED that the Secretary's motion to dismiss the complaint (Doc. 5) is GRANTED, and the complaint is DISMISSED WITHOUT PREJUDICE.