**ESTATE OF SHELIA WILLIAMS–MOORE, RN BSN, Willie F. Moore, RN BSN, Plaintiff, pro se**

v.

**ALLIANCE ONE RECEIVABLES MANAGEMENT, INC., and CEO; Blue Cross Blue Shield (Partners) of North Carolina and CEO; Duke University Health System, Inc. and CEO, Defendants.**

No. 1:03 CV 899.

United States District Court,
M.D. North Carolina.

Sept. 3, 2004.

Willie F. Moore, Durham, NC, pro se.

Caren D. Enloe, Smith Debnam Narron Wyche Story & Myers, L.L.P., Raleigh, NC, Stephen McDaniel Russell, Bell Davis & Pitt, P.A., Winston–Salem, NC, John Anthony Zaloom, William E. Freeman, Moore & Van Allen, Durham, NC, for Defendants.

1. The court has reviewed Pl's Motion to Quash (docket no. 61) and it is HEREBY

## O–R–D–E–R

BEATY, District Judge.

On June 8, 2004, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and notice was served on Plaintiff and a copy was given to the court.

Within the time limitation set forth in the statute, Plaintiff and Defendants Blue Cross Blue Shield and Duke University Health System objected to the Recommendation.

The court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's report. The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS THEREFORE ORDERED** that (1) Plaintiff's motion to dismiss Defendant Alliance One (docket no. 32–1) without prejudice under Rule 41 upon payment of costs to Alliance One be **GRANTED**; (2) the motion of Alliance One to dismiss (docket no. 23–1) is **DENIED**; (3) the motion to dismiss (docket no. 30–1) by BCBSNC is **GRANTED IN PART** in that all claims against BCBSNC, except for the claim alleging race discrimination under 42 U.S.C. § 1981, are **DISMISSED**; and (4) the motion to dismiss (docket no. 27–1) by Duke Health is **GRANTED IN PART** in that all claims against Duke Health, except for the intentional infliction of emotional distress claim and the claim alleging race discrimination under 42 U.S.C. § 1981, are **DISMISSED**. To the extent Plaintiff has a claim under the FEHBA based on denial of benefits, that claim is **DISMISSED** without prejudice to Plaintiff to exhaust his administrative remedies as set forth by the OPM regulations.[1]

DENIED. Fed.R.Civ.P. 6(a) & 72(b).

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

WALLACE W. DIXON, United States Magistrate Judge.

This matter is before the court on a motion by pro se Plaintiff for leave to supplement his pleadings [docket no. 48] and on his motion to dismiss Defendant Alliance One without prejudice [docket no. 32–1]. Also pending before the court are motions to dismiss by all three Defendants [docket nos. 27–1, 23–1, 30–1]. Each party has responded in opposition to the respective motions, and the matter is ripe for disposition. The parties have not consented to the jurisdiction of a magistrate judge, and the court must therefore address the motions by way of recommendation.

In this lawsuit, pro se Plaintiff Willie F. Moore is proceeding individually and as the representative for the estate of his deceased wife Shelia Williams–Moore. Plaintiff has sued (1) Duke University Health System, Inc. ("Duke Health"), the hospital that treated his wife with pain management for cancer, (2) Alliance One Receivables Management, Inc. ("Alliance One"), a debt collection agency hired by Duke Health to collect a disputed balance owed, and (3) Blue Cross and Blue Shield of North Carolina ("BCBSNC"), his wife's former health insurance company. Although the legal claims are not entirely clear, it appears that Plaintiff is bringing an action through 42 U.S.C. § 1983 alleging a violation of his Fourteenth Amendment rights, an action for race discrimination under 42 U.S.C. § 1981, and various state law claims, including medical malpractice/wrongful death, fraud, and breach of contract. There is no complete diversity of citizenship, and the court's original jurisdiction is based solely on federal question jurisdiction under 28 U.S.C. § 1331.

### Facts

Although Plaintiff's allegations are disorganized and extremely difficult to follow, I will attempt to reconstruct the events that led to this lawsuit.[1] Plaintiff's deceased wife, Shelia Williams–Moore ("Shelia") was a retired federal employee who received her health insurance benefits from BCBSNC. Shelia was diagnosed with cancer sometime before May 2000, and she sought treatment at Duke Health. Shelia declined chemotherapy treatment and blood products and opted only for pain management as treatment. About a year and a half later, on October 31, 2001, Plaintiff and Shelia insisted that Shelia be admitted into the Duke University Medical Center hospital ("DUMC") for portal catheter placement and pain management. BCBSNC initially refused to provide coverage for admission to the hospital, and the hospital admitted Shelia as a "self-pay." BCBSNC subsequently authorized coverage for the hospital admission after Plaintiff and Shelia complained.[2] While in the hospital, Shelia was given Dilaudid, a narcotic used to relieve moderate to severe pain.

---

**1.** Indeed, Plaintiff's allegations come close to falling the clarity requirement of Rule 8 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8 ("A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.").

**2.** More specifically, Plaintiff alleges that "[i]n October 2001, the defendants refused to admit Shelia to Duke Hospital for pain management until after verbal complaints were made." Compl. ¶ 2. Plaintiff further alleges that "the defendants were forced to admit Shelia into Duke Hospital for pain management after plaintiff argued Shelia's ability to afford Duke's services were [sic] not limited to what 'our insurance company' would approve." Compl. ¶ 3.

On November 3, 2001, at the insistence of BCBSNC and Duke Health, and against Shelia's stated wishes to remain in the hospital longer, the hospital discharged Shelia to begin home therapy and to continue with the Dilaudid treatments. Plaintiff alleges that the hospital discharged Shelia before the doctors had adequately titrated Shelia's Dilaudid dosage (i.e., monitored the dosages until the most effective and safe levels were found). Plaintiff alleges that the Duke Health doctors then "delegated the responsibility of titration to workers for which the task was beyond their competency." Plaintiff alleges that during Shelia's subsequent home therapy, she was given toxic levels of Dilaudid, which "anesthetized" her organs and caused other debilitating side effects, including memory loss. After contacting a third-party medical provider who opined that the Dilaudid levels could be causing her symptoms, Shelia reduced her Dilaudid dosage without the consent of the Duke Health doctors, and her condition immediately improved.

On December 17, 2001, Shelia was admitted into the DUMC emergency room. She was malnourished, anorexic, and had lost weight since the October 31, 2001, hospital admission. Plaintiff alleges that during the December 17, 2001, hospital stay, Shelia's medical team established a care plan for Shelia, which included nutritional supplements, but that the Duke Health doctors subsequently failed to provide Shelia with services in accordance with the care plan. Plaintiff contends that because of the failure to follow the established care plan, Shelia's malnourishment was not properly treated, thus causing her death on January 19, 2002. Plaintiff also contends that Shelia was wrongly diagnosed with bleeding ulcers and that the diagnosis resulted in her wrongful death. Compl. ¶ 1 and Prayer for Relief, ¶ 3.

Although Plaintiff's asserted legal claims are unclear, it appears that, as to Duke Health and BCBSNC, Plaintiff is purporting to bring a § 1983 action for a violation of Shelia's Fourteenth Amendment rights as well as a claim for race, gender, and religious discrimination under 42 U.S.C. § 1981. Plaintiff also appears to be bringing state law claims against Duke Health and BCBSNC for medical malpractice/wrongful death, breach of contract, and fraud. Finally, as to Alliance One, Plaintiff alleges that Alliance One committed fraud by billing Shelia for services that were not owed.[3]

*Procedural Facts*

On September 22, 2003, Plaintiff filed the original complaint. On October 24, 2003, Alliance One filed its answer. On October 30, 2003, Duke Health filed its answer. On November 5, 2003, BCBSNC filed its answer. On December 17, 2003, an initial pretrial conference was held before the undersigned, during which the court stayed discovery and set a January 9, 2004, deadline for motions to dismiss. On December 19, 2003, Plaintiff moved to amend his complaint. On January 5, 2004, without an order by the court granting leave to amend, Plaintiff filed an "Amended Complaint."

On January 8, 2004, Duke Health filed a motion to dismiss Plaintiff's claims under Rule 12(b)(6) and, alternatively, for judg-

---

**3.** I note that, in addition to these claims, in the "Summary" of the original complaint Plaintiff lists a plethora of state and federal statutory provisions. The statutes and regulations cited there are completely irrelevant to this case and/or do not give rise to a private cause of action. Thus, any claims based on the statutes listed in this string of citations should be dismissed. Furthermore, as Defendants point out, Plaintiff's references in the caption to the "CEO" of each named Defendant should be stricken. *See* Fed.R.Civ.P. 12(f).

ment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. On the same day, Alliance One filed a motion to dismiss Plaintiff's claims under Rule 12(b)(6) and 12(b)(1). On January 12, 2004, BCBSNC filed a motion to dismiss Plaintiff's claims under Rule 12(b)(6). On the same day, Plaintiff filed a motion to dismiss Alliance One without prejudice. On January 13, 2004, Plaintiff filed a motion to strike the amended complaint from the record, and on February 3, 2004, Plaintiff submitted a second motion for leave to amend his complaint. Plaintiff did not, however, attach a proposed amended complaint to his second motion. Finally, on March 16, 2004, before receiving a ruling on either of his two previously filed motions to amend, Plaintiff filed a motion to supplement his complaint under Rule 15(d) of the Federal Rules of Civil Procedure, and he has attached a proposed "supplemental complaint" to the motion. Plaintiff's motion to supplement his complaint, his motion to dismiss Alliance One without prejudice, and Defendants' motions to dismiss are now before the court. The court will first address Plaintiff's motion to supplement his complaint.

### I. Plaintiff's Rule 15(d) Motion to Supplement the Pleadings

The court first addresses Plaintiff's Rule 15(d) motion to supplement his pleadings. Rule 15(d) provides that a party may file supplemental pleadings "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." FED. R. CIV. P. 15(d). Rule 15(d) motions are to be evaluated under the same standards used to evaluate motions to amend pleadings under Rule 15(a), which generally states that leave to amend shall be freely granted when justice requires unless there are valid reasons for denying leave, such as undue delay, bad faith, or futility. *See* 6A CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1504 (2d ed.1990) (discussing Rule 15(d)). This circuit's court of appeals has observed that "[s]o useful are [Rule 15(d) motions] and of such service in the efficient administration of justice that they ought to be allowed as a matter of course, unless some particular reason for disallowing them appears." *New Amsterdam Cas. Co. v. Waller,* 323 F.2d 20, 28–29 (4th Cir.1963). Moreover, courts have held that pro se plaintiffs in particular should be granted leave to amend their pleadings at least once where a liberal reading of the complaint gives any indication that a valid claim might be stated. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2nd Cir.1999); *Gordon v. Leeke,* 574 F.2d 1147, 1152–53 (4th Cir. 1978).

Here, the proposed supplemental complaint contains additional factual allegations. It also appears to bring additional state law claims against Duke Health and BCBSNC for libel and slander and intentional infliction of emotional distress and additional claims against Alliance One for intentional infliction of emotional distress and invasion of privacy. Supp. Compl. ¶¶ 1(a) through 1(e), 7, 10. Furthermore, in the proposed supplemental complaint, Plaintiff for the first time invokes the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914. In so many words, Plaintiff states that as a retired federal employee Shelia was covered under the FEHBA, but she was not required to exhaust her administrative remedies under the Act before bringing this lawsuit. Supp. Compl. ¶ 5.

Applying the liberal standards of Rule 15(a) to Plaintiff's motion under Rule 15(d), and in light of Plaintiff's pro se status, the court will allow the requested supplementation. Although Plaintiff's claims may not survive a motion to dis-

miss, and the supplementation may ultimately prove futile, Plaintiff is proceeding in this matter pro se, and should be afforded every reasonable opportunity to clarify his claims. In the interest of justice, leave to supplement is therefore appropriate. *See, e.g., Bemben v. Fuji Photo Film U.S.A., Inc.*, No. 01 Civ. 8616(KMW)(DF), 2003 WL 21146709, at *1 (S.D.N.Y. May 19, 2003). Plaintiff's motion under Rule 15(d) to supplement his complaint is granted, and the court will consider the remaining motions in light of the allegations made in the original complaint and the supplemental complaint.

## II. Plaintiff's Rule 41 Motion to Dismiss Alliance One Without Prejudice

■ I next consider Plaintiff's motion to dismiss without prejudice the claims against Alliance One. Here, Plaintiff alleges several state law claims against Defendant Alliance One, the collections agency hired by Duke Health to bill Shelia for unpaid services. Although Plaintiff's allegations are unclear, it appears that he alleges claims against Alliance One for fraud, intentional infliction of emotional distress, and invasion of privacy. Defendant Alliance One opposes Plaintiff's motion, arguing that the claims should be dismissed *with* prejudice. For the following reasons, it is recommended the court grant Plaintiff's motion.

Rule 41(a)(1) of the Federal Rules of Civil Procedure allows a plaintiff to dismiss his complaint without prejudice and without the permission of either the adverse party or the court at any time before the defendant files an answer or a motion for summary judgment. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394–95, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). After the defendant has filed an answer or a motion for summary judgment, however, a plaintiff must seek dismissal under Rule 41(a)(2), which provides, in pertinent part, "[e]xcept as provided in [Rule 41(a)(1)], an

action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Here Plaintiff filed his Rule 41 motion for dismissal after Alliance One filed its answer. Therefore, the motion is appropriately deemed as one brought under Rule 41(a)(2). *See Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir.1993). Although Rule 41(a)(2) has been said to place the issuance of an order granting voluntary dismissal within the discretion of the court, this does not mean the court has unrestricted authority in this area. 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2364 (2d. ed.1995). The purpose of Rule 41(a)(2) is to allow freely for voluntary dismissals "unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir.1987). Thus, where no legal prejudice can be shown, the plaintiff has a right to voluntary dismissal upon payment of the defendant's costs. *See* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2366 (2d ed.1995); *Eaddy v. Little*, 234 F.Supp. 377, 379 (E.D.S.C.1964) ("A plaintiff generally has the right to a voluntary dismissal, upon the payment of the defendant's costs, unless it appears that the defendant would suffer from plain legal prejudice other than the mere prospect of a second lawsuit.").

■ Here, there is no indication that voluntary dismissal would cause Defendant Alliance One to suffer "plain legal prejudice." The parties are still in the early stages of litigation. Furthermore, the mere fact that Plaintiff may bring a successive lawsuit against Alliance One is not a sufficient reason to deny dismissal. *Davis*, 819 F.2d at 1274–75. Therefore, it is recommended that the court allow Plaintiff's motion to dismiss without prejudice

all claims against Alliance One upon payment of costs to Alliance One. *See Southern Ry. Co. v. Chapman*, 235 F.2d 43 (4th Cir.1956); *Sox v. Estes Express Lines*, 92 F.R.D. 71 (D.S.C.1981).

### III. Motions to Dismiss by Defendants BCBSNC and Duke Health

The court next considers the motions to dismiss filed by Defendants BCBSNC and Duke Health. In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F.Supp. 811, 813 (M.D.N.C.1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Dismissal under 12(b)(6) is generally regarded as appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McNair*, 95 F.3d at 328 (noting that the proper question is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief); *Food Lion*, 887 F.Supp. at 813. Stated differently, the issue is not whether the plaintiff will ultimately prevail on his claim, but whether he is entitled to offer evidence to support the claim. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir.1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir.1978). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts which set forth a claim.

### A. Plaintiff's Federal Claims Against Defendants Duke Health and BCBSNC

Here, Plaintiff purports to allege claims against Defendants Duke Health and BCBSNC for violations of his and his wife's federal and constitutional rights. More specifically, he alleges that Defendants discriminated against him and his wife based on race, gender, and perceived religion in violation of 42 U.S.C. § 1981. He also purports to being an action through 42 U.S.C. § 1983 for a violation of his and his wife's rights under the Fourteenth Amendment. The court will address each claim in turn.

### 1. Plaintiff's § 1981 Claims Against Duke Health and BCBSNC

Section 1981 reads, in pertinent part, as follows: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Furthermore,

it is now well settled that section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Runyon v. McCrary,* 427 U.S. 160, 170–71, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). For a plaintiff to state a claim under 42 U.S.C. § 1981, he must plead facts showing "(1) he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute ...." *Jackson v. Blue Dolphin Communications of North Carolina, L.L.C.,* 226 F.Supp.2d 785, 789 (W.D.N.C. 2002) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2nd Cir.1993)).

 Here, Plaintiff has satisfied his burden under Rule 12(b)(6). Although he does not state in his complaint or supplemental complaint that he and his wife are members of a racial minority, his briefs before the court indicate that they are both black. Second, he alleges that Defendants breached certain contracts with Plaintiff and Shelia regarding health insurance and medical services because of Plaintiff and Shelia's race. Here, Plaintiff's complaint alleges the essential elements of a race discrimination claim under 42 U.S.C. § 1981, showing that he may be entitled to relief.[4] The United States Supreme Court has stated that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Here, Plaintiff's allegations meet the minimal requirements to survive a motion to dismiss under Rule 12(b)(6). Therefore, Defendants' motion to dismiss should be denied as to the section 1981 claim.

**2. Plaintiff's § 1983 Action Against Duke Health and BCBSNC**

 Plaintiff also purports to bring a 42 U.S.C. § 1983 action against Defendants Duke Health and BCBSNC for a violation of his and Shelia's Fourteenth Amendment rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim for relief in an action brought under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Thus, section 1983 is the necessary vehicle through which a

---

4. As for Plaintiff's contentions of gender and religion discrimination under section 1981, section 1981 does not protect against discrimination based on religion, nor does it protect against discrimination based on a person's gender. *See St. Francis Coll. v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d

582 (1987); *Runyon,* 427 U.S. at 167, 96 S.Ct. 2586. Thus, to the extent that Plaintiff's section 1981 claim is in part based on allegations of gender and religion discrimination, Plaintiff has failed to state a claim against Defendants under 42 U.S.C. § 1981 as to these forms of discriminatory treatment.

plaintiff must assert a federal constitutional claim such as one arising under the Fourteenth Amendment, which states in pertinent part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

U.S. CONST. amend. XIV, § 1.

 Both the state-action requirement of the Fourteenth Amendment and the under-color-of-state-law element of § 1983 exclude from their reach "merely private conduct, however discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)). Thus, conduct is only actionable under § 1983 and the Fourteenth Amendment when it is "fairly attributable to the state." *United Auto Workers v. Gaston Festivals, Inc.*, 43 F.3d 902, 906 (4th Cir. 1995). Conduct by a private entity may be fairly attributable to the state (1) when a sufficiently close nexus exists between a regulated entity and a state such that the actions of the regulated entity are fairly treated as those of the state; (2) when the state has exercised coercive power or has provided such significant encouragement that the action must be deemed that of the state; and (3) when the private entity has exercised powers that are traditionally the exclusive prerogative of the state. *See Mentavlos v. Anderson*, 249 F.3d 301, 313 (4th Cir.2001). Finally, with respect to pleading requirements, "[c]onclusory allegations that [a party] acted under color of state law will not suffice." *Wolfe v. Bias*,

601 F.Supp. 426, 428 (S.D.W.Va.1984) (citing *District 28, United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1086 (4th Cir.1979)).

Here, it is undisputed that Defendants BCBSNC and Duke Health are purely private entities. Furthermore, although Plaintiff conclusorily alleges that Defendants were acting "under color of state law" when they allegedly violated Plaintiff's Fourteenth Amendment rights, the facts simply do not support such a finding. Other than this bare allegation, Plaintiff alleges no facts indicating that the conduct by the two private companies-Blue Cross Blue Shield of North Carolina and Duke University Health System-constituted "state action" for purposes of the Fourteenth Amendment. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 n. 3 (4th Cir.2002) (where the plaintiff could not recover against a purely private hospital under § 1983); *Smith v. Blue Cross & Blue Shield United of Wis.*, 724 F.Supp. 618, 620 (E.D.Wis.1989) (holding that the plaintiff could not state a Fourteenth Amendment claim against Blue Cross and Blue Shield United of Wisconsin because it was a purely private entity). Thus, Defendants' motion to dismiss Plaintiff's § 1983 action should be granted.

*B. Plaintiff's Remaining State Law Claims Against Duke Health and BCBSNC*

As to the remaining claims against Defendants Duke Health and BCBSNC, Plaintiff alleges state law claims for medical malpractice/wrongful death, breach of contract, fraud, intentional infliction of emotional distress, and libel and slander.[5]

---

**5.** The court is liberally reading the complaint and supplemental complaint to discern the remaining state law claims.

### 1. Plaintiff's Remaining State Law Claims Against Duke Health

#### a. Medical Malpractice

 The court first addresses Plaintiff's medical malpractice/wrongful death claim against Duke Health. Rule 9(j) of the North Carolina Rules of Civil Procedure requires a plaintiff alleging a medical malpractice claim to (1) allege that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care; (2) allege that the medical care has been reviewed by a person that plaintiff will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care; or (3) allege facts establishing negligence under the doctrine of res ipsa loquitur. *See* N.C. GEN. STAT. § 1A–1, Rule 9(j) (2001). Here, Plaintiff has not alleged that Shelia's care was reviewed by an expert who is willing to testify that the applicable standard of care was breached, nor has Plaintiff alleged any facts establishing negligence under the doctrine of res ipsa loquitur. Therefore, Plaintiff has not complied with the Rule 9(j) certification requirements, and his medical malpractice/wrongful death claim against Duke Health should be dismissed.

#### b. Breach of Contract

 Plaintiff also alleges that Duke Health breached its contract to provide medical services to Shelia. The facts alleged to support the medical malpractice claim are the same facts alleged to support the breach of contract claim. North Carolina does not, however, recognize breach of contract as a legal theory under which one can recover for negligent malpractice.

*Lackey v. Bressler*, 86 N.C.App. 486, 491, 358 S.E.2d 560, 563 (1987). Thus, Plaintiff may not avoid the Rule 9(j) certification requirement for a medical malpractice claim by merely attempting to recast the medical malpractice claim as one in contract. *See Jackson v. Bumgardner*, 318 N.C. 172, 185, 347 S.E.2d 743, 751 (1986). Therefore, Plaintiff's breach of contract claim should be dismissed.

#### c. Fraud

 Plaintiff also purports to bring a claim for fraud against Duke Health. In *Myers & Chapman v. Thomas G. Evans, Inc.*, the North Carolina Supreme Court set forth the general elements of common-law fraud, which are summarized as follows: (1) a false representation or concealment of a past or existing fact; (2) that was reasonably calculated to deceive; (3) made or done with the intent to deceive; (4) that actually deceived a plaintiff, who had reasonably relied on the deception; and (5) plaintiff suffered damages as a result of his reliance. 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988). Furthermore, in accordance with Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must plead with particularity as to each of the substantive elements specified by North Carolina law. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir.1999); *Weaver, Bennett & Bland v. Speedy Bucks, Inc.*, 162 F.Supp.2d 448, 453 (W.D.N.C.2001).

Here, Plaintiff makes no specific allegations that Duke Health misrepresented any material facts. Plaintiff also does not allege that Duke Health made misrepresentations with the intent that Plaintiff would rely on them. Furthermore, Plaintiff has not stated the alleged fraud committed by Duke Health with any particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. In sum,

Plaintiff has failed to state a claim for fraud against Duke Health and this claim should be dismissed.

### d. Libel and Slander

 In his supplemental complaint, Plaintiff alleges that "Defendants ... made or caused to be made libelous and slanderous false statements and misrepresentations of material facts about Plaintiffs because of race, gender and or perceived religion." Supp. Compl. ¶ 1(a). In North Carolina, the term defamation applies to the two distinct torts of libel and slander. Libel per se is "a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Phillips v. Winston–Salem/Forsyth County Bd. of Educ.*, 117 N.C.App. 274, 277, 450 S.E.2d 753, 756 (1994). Slander per se is "an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Id.* When the defamatory words are spoken with an intent that the words be reduced to writing, and the words are in fact written, the publication is both libelous and slanderous. *See Clark v. Brown*, 99 N.C.App. 255, 261, 393 S.E.2d 134, 137 (1990). Here, other than his conclusory allegation that Defendant Duke Health committed libel and slander against him and his wife because of their race, gender, and perceived religion, Plaintiff offers no additional facts whatsoever supporting a claim for libel or slander, such as any alleged publication or oral communication to a third party that would give rise to either claim. In sum, Plaintiff's complaint is simply bereft of any factual allegations regarding his claims for libel and slander, and these claims should be dismissed.

### e. Intentional Infliction of Emotional Distress

 Plaintiff's supplemental complaint also purports to bring a claim against Duke Health for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, Plaintiff must allege that (1) Duke Health engaged in extreme and outrageous conduct, (2) the conduct was intended to cause Plaintiff severe emotional distress, and (3) the conduct did, in fact, cause Plaintiff severe emotional distress. *See Denning–Boyles v. WCES, Inc.*, 123 N.C.App. 409, 412, 473 S.E.2d 38, 40–41 (1996). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986). Whether conduct rises to this level is a question of law. *Murray v. Justice*, 96 N.C.App. 169, 175, 385 S.E.2d 195, 200 (1989).

Here, Plaintiff alleges that Defendant Duke Health "... intentionally ... caused Plaintiffs to suffer severe emotional and physical harms by acts of cruelty, inhuman, and degrading treatments ... in relation to matters of healthcare because of race, gender and or perceived religion." As to particular acts by Duke Health and its doctors, Plaintiff alleges that when he and Shelia went to the Duke hospital on October 31, 2001, the Duke Health defendants were at first reluctant to admit Shelia as a "self-pay" because Duke Health preferred to have assurances from BCBSNC that Shelia's bill would be paid. Furthermore, Plaintiff alleges that Duke Health discharged Shelia from the hospital

on November 3, 2001, despite her stated desire to remain there longer, and that Duke Health threatened to discontinue its medical services to Plaintiff if BCBSNC was not involved in Shelia's post-discharge care. Plaintiff further alleges that Duke Health conspired with BCBSNC to conceal "billing, services and cares" information from Plaintiff and Shelia during her post-discharge care and that Duke Health failed to provide certain medical services to Shelia during her post-discharge care "to cut its losses." Supp. Compl. ¶ 2. Plaintiff further alleges that Duke Health "refused to treat Shelia for early signs and symptoms of Dilaudid overdose in November 2001 knowing it would reasonably and likely result in injury, damage, harm, and death," and that "[w]hen Shelia did not die from Dilaudid toxicity, she starved to death after the defendants unreasonably delayed nutritional therapy." Finally, Plaintiff alleges that Duke Health "arbitrarily and capriciously engaged in willful and wanton conduct which showed a conscious and intentional disregard of and indifference to the life and safety of Shelia Williams–Moore," resulting in Shelia's premature death.

Here, construing the pleadings in the light most favorable to Plaintiff, and keeping in mind that the burden for overcoming a Rule 12(b)(6) motion is quite low, I find that Plaintiff has sufficiently stated a claim for intentional infliction of emotional distress. Assuming for the purpose of the motion that Plaintiff's allegations are true-that is, that Duke Health refused to treat Shelia with certain medical services despite knowing that it would most likely lead to her death, and that Duke Health "engaged in willful and wanton conduct which showed a conscious and intentional disregard of and indifference to the life and safety of Shelia Williams–Moore," re-

sulting in Shelia's premature death, Plaintiff's allegations rise to the level of "extreme and outrageous" as a matter of law. More than merely alleging negligent behavior by Duke Health, Plaintiff specifically alleges wanton, intentional, and malicious behavior. Thus, the court should deny the motion to dismiss as to Plaintiff's claim for intentional infliction of emotional distress.

In sum, it is recommended that the court grant Duke Health's motion to dismiss as to all claims except for the § 1981 and intentional infliction of emotional distress claims.

### 2. Plaintiff's Remaining State Law Claims Against BCBSNC

Before addressing the motions to dismiss as to the remaining state law claims against Defendant BCBSNC, it should first be noted that the pleadings indicate that Shelia was a retired federal employee and that her insurance with BCBSNC was provided under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8913. The FEHBA was enacted for the purpose of establishing a comprehensive program to provide federal employees and retirees and their dependents with subsidized health care benefits. 5 U.S.C. §§ 8901–8913 (1982 & Supp.1987). Under the FEHBA, the United States—through the Office of Personnel Management ("OPM")—contracts with various private carriers to offer health benefit plans to its employees. Here, it appears that Shelia's health care benefits were administered pursuant to a contract between Defendant BCBSNC and the OPM. Because Shelia's insurance is provided under the FEHBA, it appears at least some of Shelia's claims against BCBSNC are subject to certain procedural provisions of the Act.[6]

---

6. Plaintiff has not attached the BCBSNC in-

surance plan to his pleadings, nor has he

### a. Exhaustion Requirement under the FEHBA

The OPM has created a detailed administrative enforcement scheme for resolving disputes over FEHBA benefits. Pursuant to the regulatory scheme, an enrollee in a plan covered under the FEHBA must first submit a dispute over benefits to the carrier and then to the OPM before seeking judicial review of a denied claim.[7] *See* 5 C.F.R. §§ 890.105(a)(1), 890.107(d)(1). Moreover, in a legal action to review final action by the OPM involving denial of health benefits, an enrollee may only name OPM, not the carrier, and "recovery . . . [is] limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."[8] 5 C.F.R. § 890.107(b)-(c). Thus, the only way for an enrollee in a FEHBA plan to seek redress for a claimed breach of the plan benefits is by invoking the appeal and review procedures set forth in the OPM regulations and thereafter bringing suit against the OPM.

### b. Preemption of State Law Claims Under the FEHBA

In addition to the exhaustion requirement, the FEHBA also contains an express preemption clause, which states as follows:

The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). Originally, FEHBA's preemption provision was narrower. It specified that only state and local laws and regulations that were "inconsistent with such contractual provisions" were preempted, which led to great consternation in the courts regarding the scope of federal preemption under the FEHBA. *See* 5 U.S.C. § 8902(m)(1) (1997) (amended 1998). Since the 1998 amendment, however, many courts now hold that the FEHBA completely preempts all state law claims that relate to health insurance or plans, regardless of whether they are inconsistent with the contractual provisions. *See, e.g., St. Mary's Hosp. v. Carefirst of Md., Inc.,* 192 F.Supp.2d 384, 388 (D.Md.2002) ("This Court is in agreement with others as to Congress's manifested intent that FEBHA completely preempts state law."); *Carter v. Blue Cross Blue Shield of Fla., Inc.,* 61 F.Supp.2d 1237, 1240 (N.D.Fla. 1999) (stating that the "1998 Act removed the phrase . . . that had troubled some courts in determining whether there was

---

referenced any provisions of the plan.

7. Under 5 C.F.R. § 890.105(a)(1):

Each health benefits carrier resolves claims filed under the plan. All health benefits claims must be submitted initially to the carrier of the covered individual's health benefits plan. If the carrier denies a claim (or a portion of a claim), the covered individual may ask the carrier to reconsider its denial. If the carrier affirms its denial or fails to respond as required by paragraph (c) of this section, the covered individual may ask OPM to review the claim. *A covered individual must exhaust both the carrier*

*and OPM review processes specified in this section before seeking judicial review of the denied claim.*
(emphasis added). *See also* § 890.107(d)(1) (stating that a legal action reviewing denial of benefits "[m]ay not be brought prior to exhaustion of the administrative remedies provided in § 890.105").

8. *See also* 5 U.S.C. § 8912 (FEHBA's jurisdictional statement, providing that "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim *against the United States* founded on this chapter") (emphasis added).

complete preemption"); *Kight v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.,* 34 F.Supp.2d 334, 339 (E.D.Va.1999) (stating that considering the language of the statute and its legislative history, Congress has clearly manifested an intent to preempt state law regarding the terms and benefits of FEHBA plans).

The new preemption provision in the FEHBA now closely resembles the express preemption provision in the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq., which states that:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). In interpreting the phrase "relate to" in the preemption clause in ERISA, the United States Supreme Court has stated that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted). The Court has further stated that a law has a "reference to" a plan when the law "acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation." *California Div. of Labor Standards Enforcement v. Dillingham,* 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). Although the "connection with" phrase is less easily defined, the Supreme Court has stated that in determining whether state law claims have a "connection with" an ERISA plan, a court must "look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Id.* (citations omitted).

Since the preemption clause in the FEHBA also contains the same "relates to" language as in ERISA, it is appropriate to address the FEHBA preemption clause in light of the Supreme Court's interpretation of the ERISA preemption clause. Here, none of Plaintiff's state law claims appear to contain a "reference to" the FEHBA plan in this case. In other words, none of the state law claims alleged here acts immediately and exclusively on FEHBA plans, nor is the existence of the FEHBA essential to the law's operation. Thus, the court must look to the objectives of the FEHBA in determining whether Plaintiff's state law claims have a "connection with" the FEHBA plan in this case and whether they are therefore preempted. Finally, courts have also held that in addition to looking to the objectives of a federal statute, as another requirement of preemption the court must determine whether the federal statute's civil enforcement provisions cover the particular state law claim. *See Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311 (3rd Cir.1994). Thus, in this case, the court must determine whether Congress intended that Plaintiff's state law claims against BCBSNC for breach of contract, fraud, medical malpractice, libel and slander, and intentional infliction of emotional distress would be preempted and whether the FEHBA's civil enforcement provisions cover each particular state law claim.

█ Here, Congress's stated goal when it enacted the FEHBA in 1959 was to provide "a measure of protection for civilian Government employees against the high, unbudgetable, and, therefore, financially burdensome costs of medical services through a comprehensive government-wide program of insurance for federal employ-

ees ..., the costs of which will be shared by the Government, as employer, and its employees." H.R. REP. No. 86–957, at 1 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2913, 2914. Thus, Congress wished to create a cost-efficient, comprehensive form of medical insurance for federal employees. It also wished to achieve uniform administration of FEHBA plans. To achieve these ends, Congress created the OPM, and vested it with the power to contract with private insurers on behalf of federal employees and to promulgate regulations to enforce the statutory scheme. In light of the above-stated goals of Congress in passing the FEHBA, this court joins other courts in holding that the FEHBA preempts state law claims arising out of disputes over a "denial of benefits" and "the nature or extent of coverage for benefits." *Roach*, 298 F.3d at 850; *St. Mary's Hosp.*, 192 F.Supp.2d at 388. Thus if any of Plaintiff's state law claims arises out of a dispute over "denial of benefits" or "the nature or extent of coverage for benefits," and if the claim is covered by the FEHBA's civil enforcement provisions, the claim will be preempted.

### 1. Breach of Contract

 Here, in support of the breach of contract claim, Plaintiff appears to be complaining that BCBSNC breached its insurance plan when it refused to provide coverage for Shelia to remain in the hospital beyond November 3, 2001. Plaintiff further suggests that BCBSNC breached

the insurance plan in the way that it handled Shelia's home treatment services, although Plaintiff is not specific as to the breach. Finally, Plaintiff argues that BCBSNC denied proper coverage to emergency room patients throughout North Carolina generally.[9] Here, Plaintiff's claim for breach of contract clearly arises out of a dispute over denial of benefits or the nature or extent of coverage for benefits.[10] *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F.Supp. 37, 43 (D.D.C. 1996) ("A claim for breach of contract is, of course, cognizable under the FEHBA's enforcement procedures."). Furthermore, this claim is exactly the type addressed by the FEHBA civil enforcement provisions, and is accordingly completely preempted.[11]

### 2. Fraud

 Plaintiff's state law fraud claim against BCBSNC also relates to the extent of coverage and fits squarely within the scope of the FEHBA's civil enforcement provisions. Here, Plaintiff alleges that BCBSNC breached its health care contract by committing fraud. More specifically, Plaintiff alleges that BCBSNC altered Shelia's billing, insurance, and medical records in order to conceal "overpayments," "poor qualities of care" and "delayed and denied treatments." Although this claim is based in tort instead of contract, it is essentially an assertion "that the plan failed to live up to its contractual duty in ways that

---

9. Notably, he does not allege that BCBSNC refused to pay for Shelia's emergency room visit in December 2001. Indeed, Plaintiff specifically alleges that BCBSNC paid Duke Health for part of the bill owed, and Plaintiff does not allege that BCBSNC is responsible under the plan for paying any more.

10. I further note that under the FEHBA statutory scheme, Shelia was not a party to the BCBSNC contract; instead, she was an enrollee subject to OPM's regulations. *See Cau-*

*dill v. Blue Cross & Blue Shield of North Carolina*, 999 F.2d 74, 76 (4th Cir.1993); *Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F.Supp.2d 1028, 1030 (E.D.Tenn.1999).

11. Alternatively, because this case involves an area of significant federal interest and highlights an area of conflict between federal policy and state law, federal law will govern Plaintiff's breach of contract claim arising out of denial of benefits. *See Caudill*, 999 F.2d at 76.

[North Carolina] law would deem appropriate." *Negron v. Patel*, 6 F.Supp.2d 366, 370 & n. 2 (E.D.Pa.1998). "Tort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract." *Burkey v. Government Employees Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir.1993). Here, because Plaintiff's fraud claim arises out of the alleged denial of contractual benefits, and it is within the scope of the FEHBA's civil enforcement provision, it is therefore preempted.[12]

*3. Intentional Infliction of Emotional Distress*

 As for the claim for intentional infliction of emotional distress against BCBSNC, in support of this claim Plaintiff argues that BCBSNC committed "willful, wanton, reckless, intentional and outrageous acts and omissions . . . in connection with not making prompt payments and unlawfully denying policyholders' claims." Supp. Compl. ¶ 12. As with the breach of contract and fraud claims, Plaintiff's intentional infliction of emotional distress claim against BCBSNC is also based on its alleged wrongful denial of benefits, and it is therefore preempted by the FEHBA.[13] *See Starnes v. General Elec. Co.*, 201 F.Supp.2d 549, 556 (M.D.N.C.2002) (holding that the plaintiff's intentional infliction of emotional distress claim was preempted

by ERISA because it was based on alleged wrongful denial or termination of benefits under an ERISA plan).

*4. Medical Malpractice*

 The court next considers whether Plaintiff's medical malpractice/wrongful death claim against BCBSNC is preempted by the FEHBA. In support of this claim, Plaintiff essentially argues that the denial of benefits by BCBSNC resulted in inadequate medical care to Shelia, which ultimately led to her wrongful death. For instance, Plaintiff argues that because of BCBSNC's refusal to provide coverage for a longer hospital stay in November 2001, the hospital discharged Shelia before properly titrating her Dilaudid treatments, which ultimately led to Dilaudid toxicity.[14] Plaintiff also suggests that BCBSNC's decisions regarding coverage somehow affected Shelia's in-home treatment in which Shelia was not given proper nutritional supplements and allegedly starved to death.

I find that Plaintiff's state law claim for medical malpractice is not preempted by federal law. Here, the medical malpractice claim does not relate to BCBSNC's denial of benefits in its role as an insurer; instead, the claim relates to BCBSNC's treatment of Shelia in its role as a health care provider. Furthermore, there is no

12. In any event, even if the court were to find that the state law fraud claim is not preempted by federal law, Plaintiff fails to state a claim for fraud against BCBSNC for the same reasons he fails to state a fraud claim against Duke Health. Plaintiff alleges "fraud" generally, but he has not stated the alleged fraud committed by BCBSNC with any particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff fails to allege any intentional misrepresentation made by BCBSNC with the intent to deceive him or Shelia, nor does he allege that they relied to their detriment on such misrepresentation.

13. In any event, even if this claim were not preempted, Plaintiff's allegations against BCBSNC in support of this claim are not sufficient to overcome a motion to dismiss. Plaintiff's allegations against BCBSNC in support of the intentional infliction of emotional distress claim at most state that BCBSNC willfully refused to live up to its obligations under the health care plan. These acts, even if true, are not "extreme and outrageous" as a matter of law.

14. Plaintiff alleges that Defendant BCBSNC "discharged [Shelia] from the hospital against her will and before completing the titration of a very dangerous medication."

civil enforcement scheme within the FEHBA to address claims for medical malpractice. *Kight*, 34 F.Supp.2d at 340. Thus, to find that the medical malpractice claim is preempted by the FEHBA would have the effect of allowing Plaintiff no recourse whatsoever to seek recovery on the medical malpractice claim. *See Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 850 (9th Cir.2002) (medical malpractice claim not preempted by the FEHBA); *Haller v. Kaiser Found. Health Plan of the Northwest*, 184 F.Supp.2d 1040, 1046 (D.Or.2001) (same); *Santitoro v. Evans*, 935 F.Supp. 733, 737 (E.D.N.C.1996) (same). Finally, although Congress has an identifiable federal interest in providing uniform benefits to government employees, there is no significant conflict between that interest and North Carolina's regulation of quality of health care. *See Corporate Health Ins., Inc. v. Texas Dep't of Ins.*, 215 F.3d 526, 539 (5th Cir.2000) (state law regulating quality of medical care not preempted and distinguishing between regulating company in role as health care provider versus role as insurer). Thus, Plaintiff's medical malpractice claim against BCBSNC is not preempted by the FEHBA.

Despite that the medical malpractice claim is not preempted by the FEHBA, the claim against BCBSNC should be dismissed for the same reason that the medical malpractice claim against Duke Health should be dismissed-that is, Plaintiff failed the comply with North Carolina's Rule 9(j) certification requirement for bringing medical malpractice claims. Thus, the court should dismiss Plaintiff's medical malpractice claim against BCBSNC.

### 5. *Libel and Slander*

▆ Finally, I note that the supplemental complaint gives passing mention of a claim for "libel and slander" against BCBSNC. Plaintiff's allegations as to this claim are so vague that the court cannot even discern whether they relate to denial of benefits and are thus preempted by the FEHBA. In any event, Plaintiff fails to state a claim for libel and slander against BCBSNC for the same reasons he fails to state a claim for libel and slander against Duke Health.

In sum, Plaintiff's state law claims against BCBSNC for medical malpractice and libel and slander should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiff's state law claims for breach of contract, fraud, and intentional infliction of emotional distress are preempted by the FEHBA. Furthermore, to the extent that Plaintiff purports to bring a claim for denial of benefits under the FEHBA, that claim should be dismissed without prejudice to Plaintiff to seek review of denial of benefits through the OPM's administrative procedures. *See Scholl v. QualMed, Inc.*, 103 F.Supp.2d 850, 854 (E.D.Pa.2000).

### *Conclusion*

For the reasons stated herein, the court **GRANTS** Plaintiff's motion to supplement his complaint under Rule 15(d). Furthermore, it is **RECOMMENDED** that the court (1) grant Plaintiff's motion to dismiss Defendant Alliance One without prejudice under Rule 41 upon payment of costs to Alliance One; (2) dismiss all claims against BCBSNC except for the claim alleging race discrimination under 42 U.S.C. § 1981; and (3) dismiss all claims against Duke Health except for the intentional infliction of emotional distress claim and the claim alleging race discrimination under 42 U.S.C. § 1981. Finally, the court should enter an order stating that, to the extent Plaintiff has a claim under the FEHBA based on denial of benefits, that claim is dismissed without prejudice to Plaintiff to exhaust his administrative remedies as set forth by the OPM regulations.

It is therefore recommended that the court **GRANT** Plaintiff's motion to dismiss

Alliance One as a defendant, **GRANT IN PART** the motion to dismiss by BCBSNC, and **GRANT IN PART** the motion to dismiss by Duke Health.

June 8, 2004.